**HOME OWNERS' LOAN CORPORATION
v. CILLEY et al.**

No. 4965.

Court of Civil Appeals of Texas. Amarillo.
Jan. 9, 1939.

Rehearing Denied Feb. 20, 1939.

314 

F. C. Davis, Jesse I. Edwards, and E. L. Early, all of San Antonio, for appellant.

H. L. Faulk, of Brownsville, for appellees.

FOLLEY, Justice.

The appellant, Home Owners' Loan Corporation, filed this suit in the nature of an action in trespass to try title against Dwight Cilley and wife, Franca Cilley, and E. H. Cilley and wife, Laura Cilley. The suit involves title to Block No. 15, Parker Tract, containing 44.55 acres out of Partition Share No. 15, Espiritu Santo Grant, in Cameron County, Texas. Since the appellant is not complaining in this court of any action with reference to Dwight Cilley and his wife Franca Cilley, hereinafter when we refer to the appellees we mean to refer to E. H. and Laura Cilley.

The land in question was deeded to Laura Cilley by the Interstate Finance Company on February 23, 1920. The testimony shows such land was purchased out of the funds of the separate estate of Laura Cilley. The consideration expressed in the deed of conveyance was $9,010 in cash paid by the grantee and her assumption of six vendor's lien notes of even date with the deed, the first in the sum of $500 and the other five in the sum of $498, signed by the Interstate Finance Company and payable to the order of Fresnos Land and Irrigation Company. Such notes were numbered one to six and became due in their numerical order from one to six years after their date. Notes numbers 5 and 6, the only two material to this law suit, were originally due respectively on February 23, 1925 and February 23, 1926. The record shows that the first four notes of the series were fully paid and released prior to the institution of this suit. On February 14, 1924, notes numbers 5 and 6 were transferred by the Fresnos Land and Irrigation Company to J. G. Fernandez.

On March 27, 1928, E. H. Cilley and wife, Laura Cilley, deeded to Dwight Cilley, their son, an undivided one-third interest in the above land. The consideration expressed in their deed to the son was $1 in cash and the assumption by the grantee of the payment of one-third of the indebtedness then outstanding against such land as evidenced by notes numbers 5 and 6. The deed further provided that Dwight Cilley had agreed to pay one-third of all taxes then due or to become due on the property. On January 18, 1929, E. H. Cilley and wife executed an extension agreement in favor of J. G. Fernandez extending the maturity date of note number 5 to February 23, 1931. Although note number 6 was long past due at such time, it was neither included nor mentioned in this extension agreement.

On December 6, 1929, J. G. Fernandez transferred both the notes in question to the Southland Life Insurance Company. Simultaneously with such transfer Dwight Cilley executed his note in the sum of $2,000 payable to the Southland Life Insurance Company. In connection therewith Dwight Cilley, then a bachelor, also executed a deed of trust in favor of the Southland Life Insurance Company to secure the payment of the $2,000 note. The property conveyed in such deed of trust was described as follows: "Being all of Block No. 15 of the Parker Tract, containing 44.55 acres of land; * * * and being the identical land conveyed to Dwight Cilley by E. H. and L. J. Cilley by warranty deed dated March 27th, 1928, recorded in Book 185, pages 525-526 of the Deed Records of Cameron County, Texas."

This deed of trust also provided that the proceeds of the loan therein involved had been used to extend and renew a balance due upon said notes numbers 5 and 6 in the total sum of $1,074.88, plus the sum of $925.12 advanced to the borrower to be applied upon the payment of "ad valorem taxes now owing against the herein above described property."

On June 13, 1934, the Southland Life Insurance Company transferred and assigned to the appellant, Home Owners' Loan Corporation, the balance of the indebtedness due by Dwight Cilley in the sum of $1,794.65, together with the lien securing the same, reciting that the indebtedness and lien were more fully described in the deed of trust from Dwight Cilley to the Southland Life Insurance Company of record in the deed of trust records of Cameron County, Texas. Simultaneously with this transfer and assignment Dwight Cilley and wife, Franca Cilley, executed and delivered to the Home Owners' Loan Corporation their promissory note in the sum of $2,133.65, payable in monthly installments. By deed of trust they also purported to convey for the benefit of appellant, "all of the following described real estate, situated in the County of Cameron, State of Texas, to-wit: Block Numbered Fifteen (15) Parker Tract, containing 44.55 acres out of Partition Share #15, Espiritu Santo Grant, Cameron County, Texas." This deed of trust represents that the note was given in lieu and in extension of the balance due upon the note of Dwight Cilley to the Southland Life Insurance Company as evidenced by the deed of trust to the Southland Life Insurance Company, and for $220.10 in taxes due upon the property. On April 6, 1937, after default in the payments on the note, the duly appointed substitute trustee, under the authority of the deed of trust to the appellant, sold the lands involved to the Home Owners' Loan Corporation for the sum of $1,400 and executed his deed therefor to the appellant.

Thereafter, on May 5, 1937, the appellant filed this suit. In this connection it should be stated that the appellant in its pleadings did not attempt to foreclose under the provisions of the two deeds of trust outlined above and asked for no affirmative relief for the money advanced by it to Dwight Cilley, but stood only on its trespass to try title action, asserting that the title to all the property had passed to the appellant by reason of the sale under its deed of trust.

Dwight Cilley and wife, Franca Cilley, made no appearance, but the appellees, E. H. Cilley and Laura Cilley, answered by the general issue and a plea of not guilty. They alleged that the property constituted their homestead, and that the notes in question, as far as they were concerned, were barred by the statute of limitations. They also set up a cross-action for the recovery of the title and possession of an undivided two-thirds interest in the property, basing such cross-action upon their title as shown by the record and their failure to join in the execution of the instruments above mentioned. By trial amendment the appellees further asserted that the two-thirds undivided interest in the land constituted the separate property of Laura Cilley.

All matters of fact as well as of law were submitted to the court. A default judgment was rendered in favor of the appellant against Dwight Cilley and his wife, Franca Cilley, for title and possession of an undivided one-third interest in the property. Judgment was rendered against the appellant and in favor of E. H. Cilley and Laura Cilley as to the remaining undivided two-thirds interest in the property, and decreed a partition as between the appellant and the appellees E. H. Cilley and Laura Cilley. The court further adjudged that the undivided two-thirds interest of the appellees was the separate property of Laura Cilley and had constituted the homestead of the appellees since 1920. From the judgment as to the undivided two-thirds interest awarded to E. H. Cilley and Laura Cilley, the appellant prosecutes this appeal.

The testimony is undisputed that the undivided two-thirds interest of the appellees, E. H. Cilley and Laura Cilley, constituted their homestead, and that they had resided upon such property as such since its purchase in 1920 by Mrs. Cilley. It is equally uncontroverted that the property was purchased by Mrs. Cilley out of the funds of her separate estate and that the undivided two-thirds interest in such property was a part of her separate estate. The record further reveals that she was married at the time such property was conveyed to her. It is also conceded that, as against the interest in the land of E. H. and Laura Cilley, note number 6 became barred by limitations on February 23, 1930 and note number 5 became barred by limitations on February 23, 1935, unless their maturity dates were extended by the above instruments executed by Dwight Cilley.

 The trial court concluded that under the facts as above stated, Dwight Cilley was without authority to extend the whole of the indebtedness as against Laura Cilley by the renewal notes and deeds of trust above mentioned. It is our opinion

that the language of the deed of trust executed by Dwight Cilley to the Southland Life Insurance Company precludes the contention of the appellant that more than an undivided one-third interest in the property was included in such transfer. Although the instrument describes the property as "Being all of Block 15 of the Parker Tract * * *." such description is limited by the further language: "and being the identical land conveyed to Dwight Cilley by E. H. and L. J. Cilley by warranty deed dated March 27th, 1928, recorded in Book 185, pages 525–526 of the Deed Records of Cameron County, Texas." The deed thus referred to is very definite that only an undivided one-third interest had passed to Dwight Cilley. The deed of trust to the appellant, however, does purport on its face to transfer all of the property in question. At the time of its execution, however, note number 6 was barred by limitation as far as Laura Cilley's interest in the land was concerned, unless theretofore renewed and extended by Dwight Cilley in such a manner as to bind Laura Cilley. At the time this suit was filed both of the notes were barred by limitations as against the interest of Laura Cilley unless theretofore renewed and extended by the acts of Dwight Cilley. It is therefore our opinion that all the issues in this suit depend upon the authority of Dwight Cilley to renew and extend the indebtedness and lien on the whole of the property without the joinder of E. H. and Laura Cilley. The appellant asserts that the parties bore to each other the relationship of tenants in common and that for such reason Dwight Cilley could bind his cotenants.

Upon the rights of a grantee of a tenant in common who purports to convey more than his interest in the common property, in 62 C.J. 547, para. 227, we find the following language: "The grantee of a tenant in common who, without authority of his cotenants, purports to convey more than his own interest in the common property, is entitled to the same rights as his grantor, but no more. In accordance with the general rule a purchaser of common property from one of the tenants therein may be bound to know the extent of the tenant's authority to bind his cotenants, and a purchaser from a cotenant with notice, actual or constructive, of the character of his title is bound by such notice, and will be limited in his holding to the actual interest of his grantor."

Also in 62 C.J. 545, para. 225, it is stated: "A conveyance by one tenant in common of more than his own undivided interest in the common property, in the absence of prior authority or subsequent ratification, express or implied, carries only the undivided interest of the grantor."

On the question as to the authority of cotenants to bind each other, from 62 C.J. 533, para. 209, we quote: "Under ordinary circumstances neither tenant in common can, in dealing with third persons, bind the estate or person of the other by any act with relation to the common property, not previously authorized or subsequently ratified, for cotenants do not sustain the relation of principal and agent to each other, nor are they partners."

In support of this proposition the text cites the following Texas cases: Thomas v. Morse, 80 Tex. 289, 16 S.W. 48; Torrey v. Martin, Tex. Sup., 4 S.W. 642; Kirby v. Hayden, 44 Tex.Civ.App. 207, 99 S.W. 746; Hintze v. Krabbenschmidt, Tex.Civ.App., 44 S.W. 38; Gillum v. St. Louis, etc., R. Co., 4 Tex.Civ.App. 622, 23 S.W. 716.

Further in support of such rule as applied to mortgages and trust deeds, in 14 Am.Jur. 155, para. 88, it is said: "Pursuant to the general rule hereinbefore stated, it is settled law that no single co-owner of property held jointly or in common can encumber it by his own sole act; this means, of course, that a mortgage or trust deed executed by less than all of the cotenants and purporting to bind the entire estate is a mere nullity in so far as the non-assenting cotenants are concerned, unless they authorized such action or thereafter ratified it. But it is well established that such an encumbrance is valid as to the cotenant who executed it, and will be held good as to the part allotted to him in any subsequent partition; or, if there be a judicial sale of the premises to a stranger, the mortgage will follow the mortgagor's interest in the proceeds, and will not affect the title of the purchaser."

 From the above quotations it will be seen that the general rule is that one tenant in common cannot by his sole act sell or encumber more than his portion of the common property. This rule, like most general rules, has its exceptions. There are only two exceptions enumerated above. One is that the act of the cotenant with reference to the common property must have been previously authorized by the non-assenting cotenants, and the other is that

317

it must have been subsequently ratified. In Texas another variation of the general rule was announced in the case of W. C. Belcher Land Mortgage Co. v. Taylor et al., Tex.Com.App., 212 S.W. 647. In that case the surviving wife was a tenant in common with her children. She alone extended a pre-existing debt upon the common property. The Commission of Appeals of Texas held that as a tenant in common with her children, in order to protect her interest and that of her children and to save the property from threatened foreclosure, the surviving wife was authorized to extend the time of payment of the indebtedness. A similar variation from the general rule was applied by this Court in the case of Law v. Lubbock Nat. Bank et al., 21 S.W. 2d 92, in which the Belcher case was cited as authority. The exception to the general rule thus announced is little more than an elaboration or outgrowth of the two former exceptions in that if conditions existed as were evident in the Belcher case, under the theory of estoppel, previous authorization or subsequent ratification would be necessarily implied in a court of equity. However, all the exceptions to the rule, when closely analyzed, resolve themselves into questions of fact to be determined from the particular circumstances of each case. The trial court having expressly and impliedly found that no conditions existed in this case to avoid the application of the general rule, it therefore becomes necessary for us only to determine whether or not he was justified under the record to reach such conclusion.

■ On the question of estoppel the appellant presented its sole witness, Archie Harwood, who was the appraiser of the Home Owners' Loan Corporation. His testimony was with reference only to the loan made by the appellant. He did not, nor did any other witness, undertake to testify as to the transactions in connection with the loan made by the Southland Life Insurance Company, which loan was taken over and extended by the appellant. Harwood stated that upon his inspection of the property before his company made the loan both of the appellees informed him that the property belonged to their son. The appellees denied that they made such representations, and, in the absence of an express finding, we must presume that the court, who was the trier of the facts, found in favor of the appellees upon this controverted issue of fact. Moreover, at the conclusion of the evidence the parties agreed by

stipulation in the record that prior to the making of the loan in question the "Home Owners Loan Corporation was furnished an abstract of title, which was examined by their attorney, and that they relied upon the abstract and the opinion of their attorney in approving the title and making the loan, and made no independent investigation other than as stated in the abstract, for the purpose of determining whether or not the property was the separate property of Mrs. Cilley, or the community property of Laura J. Cilley and her husband." Although the abstract of title thus referred to was not introduced in evidence, we are authorized to presume that it contained a true statement of the record title. Such being true the appellant possessed both actual and constructive knowledge before the loan was made that Dwight Cilley owned only an undivided one-third interest in the land, yet no excuse is offered as to why the appellees were not required or requested to join in the extension agreement and renewal of the loan. Such action on its part, with full knowledge of the true facts, would necessarily relegate the appellant to stand upon the theory that other conditions existed in harmony with the above exceptions to the general rule which were sufficient to authorize Dwight Cilley to bind the appellees by his sole act.

■ The testimony fails to reveal, however, that any such conditions prevailed. There is a total absence of any proof that at the time either of the above loans were made there existed any threatened foreclosure of the property. There is equally absent from the testimony any conditions or circumstances that would charge the appellees with previous authorization or subsequent ratification of the loans. On the other hand, at the time the loan was made by the appellant, the testimony shows that Mrs. Cilley had no knowledge that the indebtedness was past due. E. H. Cilley testified that he did not know that the Southland Life Insurance Company was then pressing any demands for payment. There is also absent from the record any indication that any immediate demands for payment were being made by the holder of the notes when the Southland Life Insurance Company made its loan in December, 1929. On the whole, the record fails to reveal any imminent danger of foreclosure at the time either of the loans were made or that any conditions existed which would necessarily raise the conclusion that the action of Dwight Cilley in procuring either

of the loans was in order to protect his interest or the interest of his father and mother. It is true that at the time each loan was made the indebtedness was past due, but this fact alone would not be sufficient to constitute threatened or imminent danger of foreclosure. The original indebtedness had been past due at various times from its inception without foreclosure.

 The trial court found upon sufficient testimony that the undivided two-thirds interest of Laura Cilley was her separate property and that such property had constituted the homestead of the appellees since its purchase in 1920. The only interest that the husband ever had in the property was his homestead right by virtue of his wife's ownership of the property. Although the court found that both of the loans in question were made with the knowledge of E. H. Cilley, mere knowledge on his part, under the circumstances of this case, would not imply that he either authorized the loans or that such loans were made for the protection of the common property. Furthermore, his knowledge would not be imputed to his wife who had absolutely no connection with any of the transactions in regard to the loans. She neither authorized them before they were made nor ratified them afterward. Although we doubt the renewal agreements were sufficiently definite as to the intent of the contracting parties as to constitute a novation of the original contract lien, yet the testimony does reveal that the appellees considered the renewal agreements to be the sole obligations of their son, and the conduct of the appellees throughout the record as made shows that it was their understanding that the one-third interest of their son alone was to stand good for the debt. Such an understanding on their part, though not binding on the appellant in the absence of such an understanding on its part, does add some weight to the conclusion that the appellees neither authorized nor ratified the acts of their son in such manner as to bind their interest in the property.

 From all the facts and circumstances of this case we are of the opinion that as far as the original indebtedness was concerned the action of Dwight Cilley in renewing and extending such indebtedness was not binding upon the interest of the appellees in the land, and as against such interest the indebtedness was barred by limitations at the time this suit was filed. R.C.S. Art. 5520 (Vernon's Ann.Civ.St. art. 5520), and art. 5522.

 Regardless of our conclusions with reference to the original indebtedness, the appellant asserts that the appellees are bound on the renewal contract by virtue of the money advanced in each of the loans, over and above the original indebtedness, for the purpose of paying taxes on the property. The appellant contends that the money advanced for the payment of taxes under both of the deeds of trust would constitute a lien on all the property since such money was applied to the payment of taxes upon Laura Cilley's share of the property as well as that of Dwight Cilley. The appellant makes this contention in the face of the trial court's finding that no evidence was introduced as to the amount of taxes due upon the land. The court further found that there was no evidence to show that the sum of $925.12 mentioned in the first deed of trust for the payment of taxes was actually applied to that purpose. In the deed to the Southland Life Insurance Company the provision in regard to the taxes recited that the $925.12 advanced to Dwight Cilley was to be applied upon the payment of "ad valorem taxes now owing against the herein above described property." The property thereinabove described included only the undivided one-third interest of Dwight Cilley. Such being true, the conclusion would naturally follow that the money therein advanced for the payment of taxes was for the purpose of paying taxes only upon Dwight Cilley's one-third interest in the land. This same theory might well apply to the $220.10 advanced by the appellant to Dwight Cilley for the purported payment of taxes. The record as a whole does not indicate whether or not the taxes on the property were levied and assessed as a unit against the whole property or that assessments were made as to each individual interest in the property. In either event it is entirely possible that any taxes paid under either of the deeds of trust were applied only to the undivided one-third interest of Dwight Cilley. Such being the state of the record we do not feel justified in disturbing the findings of the trial court in regard to the payment of taxes.

In view of the record as presented it is our opinion that only the title of Dwight Cilley passed to the appellant by the sale

under its deed of trust. It therefore follows that there was no error in the judgment of the trial court denying the appellant any recovery against the appellees, E. H. Cilley and Laura Cilley, for their undivided two-thirds interest in the property.

For the reasons stated the motion of the appellant for a rehearing is overruled, our former opinion is withdrawn, and the judgment is affirmed.