

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00004-CV

ROBBYN ELIZABETH COY ARRIOLA, JOEY ARRIOLA, JACK HENRY LAWSON, AND RAVEN JONAE PRITCHETT, APPELLANTS

V.

TOMMY KUTSCHEROUSKY, SR., ET AL., D/B/A KUTSCHEROUSKY FARMS, APPELLEES

On Appeal from the 87th District Court
Limestone County, Texas
Trial Court No. 30,122-B, Honorable Patrick H. Simmons, Presiding

September 4, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

The judgment in the following case is modified and affirmed as modified. The case involves the liability of three cotenants for a breach of a lease executed by one of the three. Robbyn Elizabeth Coy Arriola, Jack Henry Lawson, and Raven Jonae Pritchett inherited an undivided one-third interest in a farm from their father. Robbyn decided to live on the property; and her siblings approved of her decision. Thereafter, she married Joey Arriola, and the two continued to reside on the farm. However, Joey,

who did not have an ownership interest in the land, met with Eric Kutscherousky in late May of 2011 to negotiate the lease on a portion of the land to Eric, his brother Tommy, and his father Tommy, Sr. Joey initially memorialized the lease via a one sentence writing upon which he affixed his signature and that of his wife. The lease term was designated as January 1, 2011 to December 16, 2016. That one sentence lease was amended the same day to indicate that the conveyance was a "cash lease." The sole signature on the amended document was that of Joey. However, that was not the end of Joey's efforts at drafting a lease. About two months later, he presented another writing to Eric (*i.e.*, the July 2011 lease). This document contained, for the first time, a description of the yearly rentals payable over the length of the lease, as well as other terms. It also alluded to the lease ending on December 31, 2015, as opposed to 2016. And, appearing at its end were the signatures of Joey, Robbyn and Eric.

In January of 2013, the Kutscherouskys tendered to Joey the 2013 rental payment. He refused to accept it. Thereafter, he and Robbyn accused their tenants of having breached the lease and, thereby, caused its termination. By that time, Joey and the cotenants decided to sell the farm. The Kutscherouskys sued the three cotenants and Joey for breach of the lease and damages. Trial was to a jury. The latter found that the cotenants and Joey had breached the agreement and awarded damages to the Kutscherouskys. Judgment was entered upon the verdict, and the judgment debtors appealed.

We have before us six issues. Each will be address but not necessarily in the order presented by Joey and the cotenants.

2

*No Jury Finding on the Essential Terms of the Contract*

The first issue we address is whether the Kutscherouskys could recover because the jury was not asked to determine the essential terms of the lease agreement. Joey and the cotenants acknowledge that the jury found the existence of a lease agreement, that the July 2011 instrument did not memorialize the entire agreement, and that the lease terms ended on December 31, 2016. But, because the jury was not asked to determine (nor did it determine) all the essential terms of the agreement, the trial court's judgment was insupportable, allegedly. We overrule the issue.

The trial court asked the jury, among other things, 1) "Do you find there was an agreement between Plaintiffs and Joey and Robbyn Elizabeth Arriola to lease the 'Farm'"; 2) "Do you find that the Defendants failed to comply with a material obligation of the lease agreement"; 3) "Do you find the Defendants terminated the lease agreement with Plaintiffs for reasons other than Plaintiffs' failure to comply with the lease agreement"; and 4) "Do you find that the lease agreement provided for the lease to conclude on December 31, 2015 or December 31, 2016?" The jury answered, "yes," "yes," "yes," and "December 31, 2016," respectively. So too were issues submitted asking the jury to determine the "probable profit loss" suffered by the Kutscherouskys during the four years remaining on the lease after the "Defendants failed to comply with a material obligation" and "terminated the lease." Those questions covered the elements of a cause of action for breached contract, that is, a contract, its breach, and the resulting damages. Consequently, we disagree with the contention that the jury issues and answers were insufficient to support the trial court's judgment.

Simply put, the trial court was free to submit the cause in broad-form. Tex. R. Civ. P. 277 (stating that in "all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions"). The questions given the jury liken to a broad-form submission. Had Joey, Robbyn, Jack and Raven wanted more particularized issues involving the terms of the contract and its breach, they should have requested them below or otherwise objected to the manner in which the cause was submitted to the jury. They did not complain then and cannot complain now. *See* Tex. R. Civ. P*.* 274 (stating that a party "objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition or instruction on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.").

*July 6, 2011 Lease Was Only Contract*

The next issue considered is that wherein Joey and the cotenants argue that the July 6, 2011 lease constituted the entire lease between the parties as a matter of law. We overrule it.

A lease is no more or less than a contract, *see Frost Nat. Bank v. L & F Distributors, Ltd.*, 165 S.W.3d 310 (Tex. 2005), and a contract can consist of multiple documents. *In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010). Furthermore, "[d]ocuments 'pertaining to the same transaction may be read together,' even if they are executed at different times and do not reference each other, and 'courts may construe all the documents as if they were part of a single, unified instrument.'" *Id.*, *quoting Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000). Finally, whether multiple writings constitute a written contract is a matter that a court may

4

determine as a matter of law.[1] *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d at 840.

As previously mentioned, Joey drafted three documents, two in May of 2011 and one in July of 2011. Each involved the lease of the same farm. Each added a little more explanation to the leasehold created.[2] None contained a merger clause. More importantly, the last document, that is, the July 2011 lease, was presented to Eric weeks *after* the Kutscherouskys assumed their roles as lessee and made their first lease payment of $1820.

In short, what we have before us is a situation akin to that described in *Laibe*, that is, documents pertaining to the same transaction, executed at different times and failing to reference each other. Given the lack of a merger clause in the final July writing and the fact that each successive writing proffered by Joey built on its predecessor, and each further explained the nature of the leasehold relationship, we cannot say that either the jury or trial court erred in considering the three writings as comprising the leasehold contract.

*Failure to Define "Hunting" in Jury Charge*

We next consider the allegation that the trial court erred in failing to incorporate a statutory definition of "hunting" into the jury charge. We overrule the issue.

The July 2011 writing prohibited "hunting of any kind" on the property. Joey discovered that the Kutscherouskys had placed one or more hog traps on the land and

---

[1] Here, the issue was submitted to the jury. When asked whether the July 2011 lease "was intended . . . to be the entire agreement of the parties as regards the lease of the Farm," the jury answered "no."

[2] For instance, the second May 2011 instrument indicated that the business relationship in which the parties entered was a "cash lease." That designation was purportedly needed by the Kutscherouskys. The July document specified the rentals to be paid, which sums were purportedly discussed and agreed to before the leasehold began but which were omitted from the two May writings.

5

directed them to remove the contraptions.[3]  They complied.  Nonetheless, Joey later deemed the act as a breach of the prohibition against hunting.  That is, he argued that trapping hogs constituted hunting per §1.101 of the Texas Parks & Wildlife Code and requested that the definition of "hunt" provided in that code section be incorporated into the jury charge.[4]  *See* TEX. PARKS & WILD. CODE ANN. §1.101 (West Supp. 2014) (defining "hunt" to mean "capture, trap, take, or kill, or an attempt to capture, trap, take, or kill").  The trial court refused to incorporate the definition into its charge, however, and purportedly erred.

To resolve this issue, we preliminarily mention several common rules of contract interpretation.  The rules we mention dictate our decision.  The first obligates the court to garner the parties' intent when construing the instrument.  *In the Interest of G.D.H.*, 366 S.W.3d 766, 771 (Tex. App.—Amarillo 2012, no pet.).  The second requires us to look at the words used within the four corners of the agreement when attempting to garner that intent.  *Id.*  The third directs us to afford those words their ordinary or plain meaning unless the writing indicates that another meaning is to be accorded the words.  *Id.*

Again, Joey drafted the July instrument.  In mentioning the phrase "hunting of any kind," he said nothing of any statute or statutory definition.  He merely said that there was to be "no hunting of any kind."  Thus, the writing failed to indicate that some specialized definition was intended to be given the word "hunting."  So, the trial court

---

[3] Eric stated he trapped a few hogs only to protect the crops.

[4] Joey and the others attempted to defend against the suit by arguing that the Kutscherouskys had breached the lease by, among other things, hunting hogs.  This purported breach was apparently encompassed within Question 6 of the charge wherein the trial court asked the jury to determine if the Kutscherouskys "failed to comply with a material obligation of the lease agreement."

6

was obligated to construe the term as it was construed in common parlance, and neither Joey nor the cotenants asked the court for such a definition.  In short, we cannot fault the trial court for rejecting an invitation to implicitly modify the lease by incorporating an unintended definition of a word contained in the lease into the jury charge.

*Kutscherouskys Breached the Lease as a Matter of Law*

Via the next issue we address, Joey and the cotenants contend that they proved, as a matter of law, that the Kutscherouskys breached the lease.  We overrule the issue.

The instances of breach to which they refer involve the failure to pay rent for 2011, the failure to repair fences, and the trapping of feral hogs.  And, in urging their point, they apparently attack the jury's answer to Question 6 of the trial court's charge. Through it, the trial court had asked the jury whether "the [Kutscherouskys] failed to comply with a material obligation of the lease agreement."  And, again, the jury replied "no."  Apparently Joey and the cotenants believe they proved, as a matter of law, that the answer should have been "yes."

In effect, Joey suggests that he and his fellow judgment debtors were entitled to a judgment notwithstanding the verdict.  Consequently, the burden falls upon them to initially show that no evidence supports the finding.  *See Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003) (stating that a trial court may grant a judgment notwithstanding the verdict if no evidence supports one or more of the jury findings); *Puga v. Salesi*, No. 01-14-00724-CV, 2015 Tex. App. LEXIS 6292, at *8  (Tex. App.—Houston [1st Dist.] June 23, 2015, no pet.) (mem. op.) (stating that a trial court may disregard a jury finding that has no evidentiary support for a negative finding and may substitute its own affirmative finding only if the evidence conclusively establishes the affirmative finding); *Phelan v.*

*Norville*, No. 07-13-00040-CV, 2014 Tex. App. LEXIS 10560, at *11-12 (Tex. App.—Amarillo September 22, 2014 no pet.) (stating that a trial court may disregard a jury's findings and render a directed verdict or judgment notwithstanding verdict if no evidence supports one or more of the jury's findings). In deciding whether this burden was satisfied, we view the evidence in the light most favorable to the finding and disregard all contrary evidence and inferences. *Tiller v. McLure*, 121 S.W.3d at 713. With these rules in mind, we turn to the issue at hand.

First, we note that Joey and the cotenants did not attempt to explain why the jury's answer to Question 6 lacked evidentiary support. Instead, they simply alleged that they proved the contrary. Yet, the record contained testimony about 1) Joey having agreed to forego rent for the calendar year 2011 given the work to be done by the Kutscherouskys to prepare the land for use, 2) feral hogs were a nuisance to farmers and the traps were placed there temporarily to protect the corn crop that had been planted, 3) Joey never knew or complained of the traps until he decided to end the lease, 4) the type of hunting of which Joey and Robbyn expressed concern involved the use of firearms, not the use of traps to catch nuisance animals like hogs, 5) Joey not contemplating the capture of feral hogs when he and Robbyn decided to prohibit hunting, 6) the Kutscherouskys having maintained the fences when needed, and 7) Joey having withheld any complaints about the Kutscherouskys' performance under the lease until he gave them notice that the lease was terminated. Such evidence could reasonably be construed as supporting the findings under attack. Why it should not be so construed was never discussed by Joey or the cotenants. So, in effect, their briefing was and is inadequate given the applicable standard of review.

8

Second, the jury was not simply asked whether the Kutscherouskys breached the lease. Instead, the trial court asked the jury if the Kutscherouskys failed to comply with a "material" obligation of the agreement, not just any obligation, and neither Joey nor the cotenants complain of that wording before us. So, to succeed at bar, they also had to explain how the instances of breach they cite were material, and they did not do that either. Nor would our review of the record evidence allow us to find, as a matter of law, that they were material.

The materiality of a breach implicates the extent to which the non-breaching party is deprived of the benefit that it could have reasonably anticipated from full performance. *Prodigy Communications Corp. v. Agricultural Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378 (Tex. 2009), *citing Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). To the extent that the failure to pay rent or maintain fences around the farm may diminish the benefit sought by Joey and Robbyn from the lease, evidence appears of record indicating that the Kutscherouskys complied with those obligations. Though that evidence may have been contradicted by other evidence, it was for the jury to determine which to believe, and we cannot say that its decision was manifestly unjust given the totality of the evidentiary record. *See Defense Resource Serv., L.L.C. v. First Nat'l Bank*, No. 10-14-00327-CV, 2015 Tex. App. LEXIS 6811, at *8-9 (Tex. App.—Waco July 2, 2015, no pet.) (stating that in considering the factual sufficiency of the evidence to support an adverse ruling on which the party challenging the judgment did not have the burden of proof, the court reviews all of the evidence and sets aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust), *citing, Cain v. Bain*, 709 S.W.2d 175 (Tex. 1986).

9

As for the matter of trapping wild hogs, a rational jury could have reasonably deduced that Joey and Robbyn were not denied the benefit of their bargain so as to make the alleged breach material. They were not being subjected to pellets or projectiles raining down on them or their house, and that is what they sought to prevent. Furthermore, the traps were on the premises for a short period of time, and Joey admitted that he was not thinking about the trapping of hogs when he decided to prohibit hunting.

In short, we cannot say that no evidence supported the jury's answer to question 6 for such evidence existed. Nor can we say that the evidence contradicting the answer to question 6 was so overwhelming as to compel us to conclude that the answer was clearly wrong or unjust.

*Arriolas Did Not Breach*

Next, Joey and the cotenants challenge the evidence to support the finding that they breached the lease. Allegedly, they did not do so because the lease automatically terminated by the Kutscherouskys' breach. But because we rejected the argument about the jury erring when found that the Kutscherouskys did not breach a material obligation of the lease, the foundation of their argument evaporated. That being so, it cannot be said that Joey had legitimate basis to declare the lease terminated and, therefore, direct the Kutscherouskys to leave the premises. Consequently, we overrule the issue.

*Recovery Against Joey's Brother and Sister-in-Law*

The final issue we address involves the entry of judgment against Jack and Raven. They contend that the evidence was both legally and factually insufficient to

support the jury's answers to questions 2 and 3. Through the former, the trial court asked the jury to decide if either Joey or Robbyn had "authority or apparent authority from Raven . . . and Jack . . . to lease the Farm" to the Kutscherouskys. Via the latter, the jury had to determine whether Raven and Jack "ratified the lease agreement. . . ." The answer to both was "yes." We sustain the issue.

Jack, Raven, and Robbyn were cotenants of the farm. That is, each owned an undivided one-third interest in the realty. *See Cecola v. Ruley*, 12 S.W.3d 848, 853 (Tex. App.—Texarkana 2000, no pet.) (stating that owners of an undivided interest in realty are cotenants). However, being cotenants did not *ipso facto* make them agents or partners of each other. *See Dyer v. Cotton*, 333 S.W.3d 703, 712 (Tex. App.— Houston [1st Dist.] 2010, no pet.) (stating that cotenants are not the agents of each other simply because they are cotenants); *accord, Williams v. Cullen Center Bank & Trust*, 685 S.W.2d 311, 314-15 (Tex. 1985), *quoting, Home Owner's Loan Corp. v. Cilley*, 125 S.W.2d 313, 316 (Tex. Civ. App.—Amarillo 1939, writ ref'd).[5] Rather, the law generally recognizes that a cotenant acts for himself. *Williams v. Cullen Center Bank & Trust*, 685 S.W.2d at 315*, quoting, Myers v. Crenshaw*, 116 S.W.2d 1125 (Tex. Civ. App.—Texarkana 1938), *aff'd*, 134 Tex. 500, 137 S.W.2d 7 (Tex. 1940). One cannot bind another to any act relating to the common property simply because they are cotenants. *Home Owner's Loan Corp. v. Cilley*, 125 S.W.2d at 316. Instead, the other cotenants must either authorize or ratify the act before becoming liable. *Id.*

---

[5] This rule of law is of particular importance since counsel for the Kutscherouskys insinuated otherwise when cross-examining Jack. He asked: Did you have any problem with Robbyn living there, operating and doing anything necessary in regard to the farm?". After Jack said "no," he asked: "And you do understand that -- you did then and you do now -- that that would bind you as well since you're a joint owner." Counsel was simply wrong when insinuating that the law makes one cotenant liable for the contracts of another cotenant merely because they both own interests in the property.

Similarly, one cotenant permitting another cotenant to physically possess the common property does not alone bind the former to the contractual obligations of the latter pertaining to the property. This is so because each cotenant has the right to enter upon, enjoy, and possess the common estate. *Byrom v. Pendley*, 717 S.W.2d 602, 605 (Tex. 1986). In other words, allowing a cotenant to inhabit and develop the common property is nothing more than recognizing the right given under law of cotenancy. It alone is not some implicit authorization for the cotenant inhabiting and developing the land to bind the others. A good example of this involves a cotenant opting to lease minerals under the common land. He has the right to do so. *Id.* And, if he should do so, the other cotenants have a choice to either join in the lease or not. If they opt for the latter course, then they are entitled to receive their share of the royalties or profits less the expenses attributable to the securing those sums. *Id.* However, they are not bound by the terms of the lease itself despite knowing of it and reaping benefit from its existence. *See Gym-N-1 Playgrounds, Inc. v. Snider,* 220 S.W.3d 905, 909 (Tex. 2007). And, that is the situation we have before us.

No evidence of record indicates that Jack or Raven knew of Joey or Robbyn's intent to lease the farm; instead, both denied having such knowledge. No evidence indicates that they knew of the lease until long after its execution; instead, both denied knowing of it until a year or more after its execution. No evidence indicates that Joey or Robbyn gave Raven or Jack any part of the lease rentals; Joey testified that none were given to Jack or Raven.

On the other hand, both Raven and Jack testified that their cotenant (Robbyn) was allowed to live on and take care of the farm. One or the other also testified that

Robbyn had the authority to lease the farm, if she so opted. That (and its various reiterations in kind) is the only evidence we found of record available for the jury to rely upon in deducing that Jack and Raven 1) authorized Robbyn and Joey to bind them to the lease or 2) otherwise ratified the lease.[6] Interestingly though, that evidence is nothing more than a recitation or acknowledgement of the rules of cotenancy and the rights of a cotenant. Without more, evidence that one cotenant permitted another cotenant to do what the law allowed him to do is not any evidence that the former ratified and thereby adopted the contracts of the latter. Nor is it evidence that the latter had either the expressed or apparent authority to bind the former. And, that Robbyn's cotenants intended their testimony to be so construed is evinced best by the following exchange between Jack and opposing counsel:

> Q: And it was all right with you that Robbyn and Joey take care of things and operate the farm.
>
> A. Sure.
>
> Q. So, you're not here testifying today that they didn't have the authority to lease the farm to the Kutscherouskys.
>
> A. Whose authority?
>
> Q. That Robbyn and Joey, they signed the lease. You don't have any problem with them leasing the farm.
>
> A. I don't think I have any authority to give them. I can't give Robbyn any authority *because she's the owner of the farm*.

(Emphasis added).

Alternatively, if we were to assume *arguendo* that a factfinder could reasonably infer from the aforementioned evidence some agreement by Jack and Raven to be

---

[6] That (and its various reiterations in kind) is the only evidence cited to us by the Kutscherouskys as supporting the jury's answers to questions 2 and 3.

bound by the actions of Robbyn and Joey, our decision would have to remain the same. As discussed above, the very same evidence would also allow one to reasonably infer that Jack and Raven were only recognizing their sister's rights under the law of cotenancy when so testifying, and that they were not either authorizing her to bind them to the lease or somehow ratifying the agreement. Given the two contrary inferences from the same evidence, we could only conclude that the testimony is no evidence supporting either inference. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 621 (Tex. 2014) (stating that "[i]f circumstantial evidence, when viewed in light of all the known circumstances, is equally consistent with either of two facts, then neither fact may be inferred.").

In sum, no evidence supports the jury findings that Joey and Robbyn had the actual or apparent authority to bind Jack and Raven to the lease or that Jack and Raven ratified the lease. So, the trial court erred in entering judgment against Jack and Raven.

We modify that portion of the judgment awarding recovery against Jack Henry Lawson and Raven Jonae Pritchett and adjudge that the Kutscherouskys take nothing against Jack Henry Lawson and Raven Jonae Pritchett. In all other things, the judgment is affirmed.

Brian Quinn
Chief Justice

14