0386

Margaret G. HURSEY, Appellant, v. Rudolph J. HURSEY, Jr., a/k/a Rudolph J. Hursey, First Federal Savings & Loan Association of Spartanburg and Jean Moore Hursey, Defendants, of whom Jean Moore Hursey is Respondent.

(326 S. E. (2d) 178)

Court of Appeals

*Robert L. Wynn, III,* and *Paul B. Zion, Holcombe, Bomar, Wynn & Gunn,* Spartanburg, *for appellant.*

*L. Paul Barnes, Ward, Howell, Barnes, Long, Hudgens & Adams,* Spartanburg, *for respondent.*

Heard Nov. 20, 1984.

Decided Feb. 1, 1985.

CURETON, Judge:

This is an action in equity to foreclose a mortgage. At issue is whether a mortgage of the marital home by the titled spouse, Rudolph Hursey, to appellant Margaret Hursey, after the commencement of divorce proceedings against him by his wife, respondent Jean Hursey, has priority over the subsequent award of an equitable interest in the home to his wife. The master to whom the case was referred recommended that Jean Hursey's equitable interest have priority. The circuit court confirmed the recommendation, holding that the lien of the homemaker spouse attaches at the time of marriage. We disagree and reverse.

Rudolph and Jean Hursey were married in 1948. In the first of a series of transactions relevant to this suit, Margaret Hursey, mother of Rudolph, made loans to him totaling $38,000 in 1959 and 1963. Hursey executed and delivered to his mother three promissory notes evidencing the obligations.

In 1977, Rudolph Hursey borrowed $45,000 from First Federal Savings and Loan Association of Spartanburg. The loan was secured by a first mortgage on the marital home which was acquired after the marriage and was titled in Hursey's name alone.

On March 10, Jean Hursey petitioned for a divorce on the ground of Hursey's habitual addiction to alcohol and/or drugs and requested an equitable division of the property of the marriage. Thereafter, on April 4, 1980, Hursey gave his mother a mortgage on the marital home to secure the $38,000 obligation represented by the three notes. The mortgage was recorded on April 7, 1980.

Jean Hursey obtained a divorce on February 19, 1981. The family court reserved all questions concerning disposition of the marital home for future decision.

Margaret Hursey instituted this foreclosure action in February, 1982. Rudolph and Jean Hursey and First Federal Savings and Loan were made parties. The parties stipulated that Jean Hursey's interests in the marital home could be adjudicated in the foreclosure action and the case was referred to the master-in-equity.

The master first found that both Margaret Hursey and First Federal were entitled to foreclosure based on Hursey's default in the payments required by the various notes. The master also found that Jean Hursey was entitled to an equitable interest of $10,000 in the marital home (valued at approximately $100,000) because of her contributions as a homemaker spouse. The master recommended that the marital home be sold and the proceeds applied first, to payment of the costs and expenses of sale, second, to discharge of the debt of First Federal ($46,812.69), third, to satisfaction of Jean Hursey's equitable interest ($10,000), and fourth, to discharge of the debt due Margaret Hursey ($38,000 principal and $29,752.50 interest). Margaret Hursey filed exceptions to the report based on the priority accorded Jean Hursey's equitable interest over her own recorded mortgage.

On June 11, 1982, the circuit court, interpreting the recently issued decision of *Parrott v. Parrott*, 278 S. C. 60, 292 S. E. (2d) 182 (1982), confirmed the master's report with this observation:

> It is apparent that this is a novel question in South Carolina but if the third exception to the rule of title as set forth in *Parrott v. Parrott, supra,* is to be given any weight then it becomes apparent that the lien of the homemaker spouse must attach as of the time of marriage.

On appeal, Margaret Hursey frames the issue as "[w]hether the equitable interest in real property awarded by the Court to a non-titled spouse as a result of divorce is entitled to priority over a valid purchase money second mortgage on the subject property?" Further, she contends that the interest of the non-titled spouse in the property of the titled spouse prior to divorce does not rise to the status of a "lien," as stated by the circuit court, but is merely a potential property right of an equitable nature which attaches as a property right only upon a decree of division incident to dissolution of the marriage.

In reviewing Margaret Hursey's first contention that her mortgage is a valid purchase money mortgage, we note that neither the master nor the circuit court

made a finding that the mortgage was a purchase money mortgage. A purchase money mortgage is recognized at common law and in equity where a purchaser of land, contemporaneous with the acquisition of the legal title or afterward, but as a part of the same transaction, executes a mortgage to secure the purchase money. *C & S National Bank of South Carolina v. Smith*, 277 S. C. 162, 284 S. E. (2d) 770 (1981); *Crystal Ice Co. of Columbia v. First Colonial Corp.*, 273 S. C. 306, 257 S. E. (2d) 496 (1979); 55 Am. Jur. (2d) *Mortgages* Section 349 (1971). It is accorded priority over all other claims or liens arising through the mortgagor although they are prior in time to the execution of the purchase money mortgage. 55 Am. Jur. (2d) *Mortgages* Section 349 (1971).

The record does not reveal exactly when Hursey acquired title to the property in issue. It does indicate that he acquired title at least seventeen years before executing the mortgage to Margaret Hursey. Consequently, we are unable to find that the acquisition of title by Hursey and the execution of the mortgage to his mother to secure loans allegedly made by her to enable Hursey to purchase the property are part of the same transaction. We also find it significant that Margaret Hursey does not attempt to assert that her mortgage, as a purchase money mortgage, has priority over the mortgage held by First Federal. Since we do not find adequate evidence to support Margaret Hursey's contention that the mortgage is a purchase money mortgage, we will address her second contention.

Margaret Hursey contends the circuit court erred in according priority to Jean Hursey's equitable claim on the ground Jean Hursey's homemaker spouse's "lien" on the property attached at marriage. It is certainly clear that in order to defeat the priority of Margaret Hursey's validly recorded mortgage, Jean Hursey must show that her claim was perfected or otherwise attached to the marital home before Margaret Hursey recorded her mortgage. S. C. Code Ann. Section 30-7-10 (1976).

We need not address all the infirmities in a rule allowing the homemaker spouse a "lien" on the property of the titled spouse during marriage. We believe the circuit court's analysis, which was made within weeks of *Parrott v. Parrott*,

*supra*,[1] reflects a common misconception of the scope of the doctrine of equitable distribution which was noted in *Rodgers v. Rodgers*, 98 A.D. (2d) 386, 390-91, 470 N.Y.S. (2d) 401, 404-05, (1983):

> While the concept of equitable distribution does borrow the theory of a community property regime that a marriage is an economic partnership between the spouses [citation omitted], is a mistake to suggest that equitable distribution and community property are synonymous (*see Painter v. Painter*, 65 N. J. 196, 216-217, 320 A. (2d) 484, 494-495 [1974]).
>
> The basic premise of a community property system . . . is that each spouse has a *present vested* undivided one-half interest in all property acquired during the existence of the marital relationship. . . . In stark contrast, under . . . equitable distribution [laws], during the marriage, and absent any divorce action, each spouse retains sole interest in the property to which he or she has title and . . . can dispose of it as he or she desires. [citations omitted]. In a divorce proceeding, which triggers the right to equitable distribution, property acquired during marriage [is distributed]. . . . [emphasis added].

Most jurisdictions addressing the nature of the concept of equitable distribution agree that equitable distribution does not purport to affect property rights during marriage but is implemented on divorce and then only when necessary to address economic injustice. *Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A. (2d) 987 (1983).. "Only if a person becomes a party to a proceeding for divorce . . . does the [equitable distribution] statute even have potential relevance. . . . [N]o change in property rights will occur except upon the entry of a judgment of allocation. . . ." *Rothman v. Rothman*, 65 N. J. 219, 320 A. (2d) 496 (1974); *accord Hofmann v. Hofmann*, 94 Ill. (2d) 205, 68 Ill. Dec. 593, 446 N.E. (2d) 499 (1983); *Kujawinski v. Kujawinski*, 71 Ill. (2d) 563, 17 Ill. Dec. 801, 376 N.E. (2d) 1382 (1978); *Interchange State Bank v. Riegel*, 190 N. J. Super. 139,

---

[1] In *Parrott v. Parrott,* the South Carolina Supreme Court recognized for the first time the interest of the homemaker spouse in the property of the titled spouse based solely on homemaker services.

462 A. (2d) 198 (1983); *Bacchetta v. Bacchetta*, 498 Pa. 227, 445 A. (2d) 1194 (1982).

The appellate courts of this State, in interpreting Section 20-7-420 of the South Carolina Code of Laws,[2] and in defining the concepts of marital property and equitable distribution, have held that equitable rights in marital property arise "upon divorce," *Parrott v. Parrott, supra,* "by decree of divorce granted," *Simmons v. Simmons,* 276 S. C. 41, 267 S. E. (2d) 427 (1980), and "upon dissolution of the marriage," *Hussey v. Hussey,* 280 S. C. 418, 312 S. E. (2d) 267 (S. C. App. 1984). It is clear that the non-titled spouse has no lien or other charge against the property of the titled spouse during marriage and we so hold.

We see no need to attempt to define the nature of the non-titled spouse's interest in the property of the titled spouse prior to divorce, or the moment at which the interest attaches to defeat the claims of others in the property. At least two remedies to protect against or prevent dissipation of marital property pending divorce are available to a non-titled spouse. Pursuant to South Carolina Code Section 15-11-10 (1976), the non-titled spouse may file a notice of *lis pendens,* or may seek a temporary injunction based on Section 15-55-20(1). In addition, if there is evidence the titled spouse conveyed marital assets in contemplation of divorce, an action may be brought to set aside the conveyance as fraudulent. *Jeffords v. Hall,* 276 S. C. 271, 277 S. E. (2d) 703 (1981): *Powell v. Green,* 281 S. C. 358, 315 S. E. (2d) 183 (S. C. App. 1984); *Hofmann v. Hofmann, supra; Wallace v. Wallace,* 291 S. E. (2d) 386 (W. Va. 1982); S. C. Code Ann. Section 27-23-10 (1976).

Here, Rudolph Hursey mortgaged the marital home to his mother prior to the entry of a decree for either divorce or allocation of the property. Margaret

---

[2] 1. S. C. Code Ann. Section 20-7-420(2) (Cum. Supp. 1984) provides:
The family court shall have exclusive jurisdiction:
. . . .
(2) To hear and determine actions:
For divorce *a vinculo matrimonii,* separate support and maintenance, legal separation ... and for settlement of all legal and equitable rights of the parties in and to the real and personal *property of the marriage* ... if requested by either party in the pleadings. (emphasis added).

Hursey, the mortgagee, recorded the mortgage before a divorce occurred. Because the validly recorded mortgage was prior in time to the subsequent judgment for equitable division in favor of Jean Hursey, the mortgage must be accorded priority pursuant to Section 30-7-10 of the South Carolina Code of Laws of 1976.[3]

For the reasons given herein, the judgment of the circuit court is

Reversed.

SHAW and GOOLSBY. JJ., concur.

---

[3] We do not know if Jean Hursey sought to have the conveyance set aside as fraudulent because the pleadings were not made a part of the record. Our judgment is therefore limited in its effect to the issues which were decided by the circuit court and presented to us by exception. *See Johnson v. Life Insurance Company of Georgia,* 227 S. C. 351, 88 S. E. (2d) 260 (1955).