746 S.E.2d 471

CHASE HOME FINANCE, LLC, Appellant,

v.

Cassandra S. RISHER, individually, as Personal Representative and Legal Heir of the Estate of Sidney Allan Risher, Justin R., a minor, Sydney R., a minor, Ashley R., a minor, Sidney J. Risher, Pierre Risher and Drayton Holmes, as Legal Heirs to the Estate of Sidney Allan Risher, and Highland Hills Homeowners Association, Inc., Defendants,

Of whom Cassandra S. Risher is Respondent.

Appellate Case No. 2012–205706.

No. 5138.

Court of Appeals of South Carolina.

Heard Jan. 16, 2013.

Decided May 29, 2013.

Withdrawn, Substituted and Refiled July 31, 2013.

204

Louis H. Lang, Jennifer N. Stone, and Kevin T. Hardy, all of Columbia, for Appellant.

H. Ronald Stanley, of Columbia, for Respondent.

THOMAS, J.

Chase Home Finance, LLC (Chase) sought to foreclose a mortgage on property owned by Cassandra S. Risher (Cassandra) and her late husband, Sidney Allan Risher (Sidney). The Lexington County Master–In–Equity allowed Chase to proceed against Sidney's undivided one-half interest, but refused to allow foreclosure of Cassandra's interest. Chase appeals. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 17, 2008, Cassandra and Sidney entered into a contract to purchase a residence in Lexington County for $505,000. After signing the sales contract, Sidney met with a loan officer at Midland Mortgage Corporation to apply for a loan. Although Cassandra was present when Sidney met with the loan officer, she did not remember completing a loan application or any other paperwork in connection with the sale.

The closing took place on July 7, 2008. At the closing, Sidney obtained a loan from Midland Mortgage Corporation for $479,750 to finance the purchase of the property and executed a purchase money note in favor of Midland Mortgage Corporation along with a purchase money mortgage to secure the note. Although Cassandra was present at the closing and both she and Sidney were named on the deed, she did not sign either the note or mortgage. The note and mortgage were subsequently assigned to JPMorgan Chase Bank, N.A., on July 7, 2008.

Sidney died on August 23, 2009, and Cassandra was appointed personal representative of his estate. According to probate documents, Sidney's assets included an undivided one-half interest in the residence.

No payments were made on the loan since Sidney's death, and the mortgage went into default. On February 3, 2010, Chase, as current holder of the note and mortgage,[1] filed this action against Cassandra individually and in her capacities as personal representative and legal heir of Sidney's estate.[2] In its complaint, Chase sought (1) foreclosure of its mortgage, (2) the establishment and foreclosure of an equitable lien on the entire subject property, including Cassandra's one-half interest, and (3) a judgment against Cassandra for unjust enrichment.

Cassandra responded on March 5, 2010, denying the substantive allegations of the complaint. Although she acknowledged Chase had a valid mortgage on Sidney's interest, she asserted she never mortgaged her undivided one-half interest and Chase should be barred from claiming any lien on the property other than its mortgage on Sidney's interest.

Pursuant to an order of reference, the Master heard the matter on May 12, 2011. During the hearing, Chase presented the testimony of a real estate paralegal and licensed title insurance agent who prepared the closing package for the sale, and the attorney who supervised the closing.[3] In addition, the record includes excerpts from a deposition that Cassandra gave on October 4, 2010.

On July 11, 2011, the Master signed an order in which he found (1) the mortgage executed by Sidney was not enforceable against Cassandra's interest in the property, (2) Chase was not entitled to an equitable lien against Cassandra's

---

1. JPMorgan Chase Bank assigned the note and mortgage to Chase on February 16, 2010, and the assignment was recorded on March 5, 2010.

2. Chase also named as defendants several other individuals and the Highland Hills Homeowners Association. None of these defendants are parties to this appeal.

3. The attorney testified he was not present at the closing because he was probably on vacation. According to the appealed order, the paralegal who prepared the closing package contacted another attorney to attend the closing.

interest or judgment against Cassandra under the theory of unjust enrichment, and (3) Chase could proceed with its foreclosure action against Sidney's undivided one-half interest.

Chase moved to alter or amend the Master's order. The Master denied the motion, and Chase appeals.

## ISSUES ON APPEAL

I. Did the Master err in finding that Chase failed to establish an equitable lien against Cassandra's undivided one-half interest in the subject property?

II. Did the Master err in finding Chase could not recover under the South Carolina common law remedy of unjust enrichment?

III. Did the Master err in citing a case on the federal common law theory of unjust enrichment?

IV. Did the Master err in holding that Chase was not entitled to any form of equitable relief?

## STANDARD OF REVIEW

"An action to establish an equitable lien is an action in equity " *Fibkins v. Fibkins,* 303 S.C. 112, 115, 399 S.E.2d 158, 160 (Ct.App.1990). Likewise, "[u]njust enrichment is an equitable doctrine." *Dema v. Tenet Physician Servs.–Hilton Head, Inc.,* 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009). In an action in equity referred to a master for final judgment, an appellate court may find facts according to its own view of the preponderance of the evidence; however, it is not required to ignore the trial judge's findings. *K & A Acquisition Group, LLC v. Island Pointe, LLC,* 383 S.C. 563, 571, 682 S.E.2d 252, 256–57 (2009).

## LAW/ANALYSIS

I. Equitable Lien

Chase first argues the Master erred in ruling it failed to prove the necessary elements to establish an equitable lien against Cassandra's interest. Specifically, Chase complains the Master erred in (1) finding Chase failed to show a debt, duty, or obligation owed by one person to another, (2) requiring Chase to show a specific debt owed from Cassandra, (3) finding such a showing of a debt from Cassandra was neces-

sary for an equitable lien to attach, (4) requiring Chase to show an "expressed affirmative action" by Cassandra to make Sidney's debt her own debt, (5) holding that because Cassandra had no obligation to Chase, there was no property on which such an obligation could attach, and (6) finding no evidence of express or implied intent that the entire property serve as collateral to secure the purchase money loan. We hold the Master correctly determined that Chase did not establish an equitable lien against Cassandra's undivided one-half interest in the subject property.

"An equitable lien or charge is neither an estate or property in the thing itself, nor a right to recover the thing, but is simply a right of a special nature over the thing, which constitutes a charge upon the thing so that the very thing itself may be proceeded against in equity for payment of a claim." *Carolina Attractions, Inc. v. Courtney*, 287 S.C. 140, 145, 337 S.E.2d 244, 247 (Ct.App.1985). " 'For an equitable lien to arise, there must be a debt, specific property to which the debt attaches, and an expressed or implied intent that the property serve as security for payment of the debt.' " *Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 250, 715 S.E.2d 348, 353 (Ct.App.2011) (quoting *First Fed. Sav. & Loan Ass'n of S.C. v. Finn*, 300 S.C. 228, 231, 387 S.E.2d 253, 254 (1989)). Furthermore, "equity is generally only available when a party is without an adequate remedy at law." *Nutt Corp. v. Howell Rd., LLC*, 396 S.C. 323, 328, 721 S.E.2d 447, 449 (Ct.App. 2011).

Citing *First Federal Savings and Loan Ass'n of Charleston v. Bailey*, 316 S.C. 350, 356, 450 S.E.2d 77, 80–81 (Ct.App. 1994), and *Carolina Attractions, Inc. v. Courtney*, 287 S.C. 140, 145, 337 S.E.2d 244, 247 (Ct.App.1985), the Master correctly stated that "[i]n order for an equitable lien to arise as to specific property, there must be a debt, a duty or obligation owing from one person to another, a res to which the obligation attaches, which can be described with reasonable certainty, *and* an intent, expressed or implied, that the property is to serve as security for the payment or obligation." (emphasis added). If a party seeking an equitable lien cannot satisfy any one of these requirements, this remedy is not available.

■ Here, there is no dispute that Chase had a valid mortgage on Sidney's interest. The question, then, is whether any deficiency remaining after a foreclosure of this mortgage would attach to Cassandra's interest. In other words, the "res to which the obligation attaches" was not the entire interest in the subject property, but Cassandra's undivided one-half interest. We agree with the Master that Chase did not show the parties had an express or implied intent that Cassandra's interest would serve as security for payment of the debt that Sidney incurred.

We recognize that Cassandra admitted in a deposition (1) she and Sidney could not have purchased the residence without the loan from Midland Mortgage, (2) she was aware of the loan, and (3) she benefited from the transaction. Nevertheless, these admissions do not warrant a finding that the Rishers and Midland Mortgage intended that Midland Mortgage or any successor-in-interest could recover against Cassandra's interest in the property for any part of the debt that Sidney's share could not satisfy in event of a default. The Master noted the attorney who attended the closing did not testify at the hearing; therefore, no information was presented about her review of the title examination, the title commitment, the loan closing instructions and documents, the deed, and the failure to obtain Cassandra's signature on the mortgage. Furthermore, although Cassandra signed several documents at the closing, there is no evidence that she was asked to sign either the note or the mortgage. We find particularly significant the Master's concern that no one from Midland Mortgage offered evidence that would have supported Chase's argument that Midland Mortgage had bargained for more than a mortgage encumbering only Sidney's interest. Applying our standard of review to the evidence presented, then, we affirm the Master's refusal to find Chase established a right to an equitable lien on Cassandra's interest.

■ Chase further suggests that it is entitled to an equitable lien on Cassandra's interest because it held a purchase money mortgage and note on the property. The priority conferred to the mortgagee of a purchase money mortgage, however, extends only to "all other claims or liens arising through the mortgagor." *SunTrust Bank v. Bryant*, 392 S.C. 264, 268, 708 S.E.2d 821, 823 (Ct.App.2011) (emphasis added)

(quoting *Hursey v. Hursey,* 284 S.C. 323, 327, 326 S.E.2d 178, 180 (Ct.App.1985)). Chase further attempts to equate Cassandra's interest with "a variety of other non-lien interests arising through the purchase-mortgagor," such as dower rights and homestead claims. Cassandra's interest, however, did not "arise" through Sidney or from her status as his wife and widow. Moreover, her interest is not a judgment or lien, but an undivided ownership interest in the property that was granted to her by the prior owners of the property.

■ Citing *Home Owners' Loan Corp. v. Cilley,* 125 S.W.2d 313 (Tex.App.1939), Chase further argues that Cassandra, as a tenant-in-common who knew about the mortgage at its inception and benefited from it, "agreed" that the entire property would be used as collateral for the loan. We hold *Cilley* is not applicable to the present case. The court in *Cilley* stated two exceptions to the rule co-tenants cannot encumber more than their individual shares: "One is that the act of the co-tenant *with reference to the common property* must have been previously authorized by the nonassenting co-tenants, and the other is that it must have been *subsequently ratified.*" *Id.* at 316–17 (emphases added). Here, it was not established that Sidney's execution of the note and mortgage was "with reference to the common property" rather than to solely his undivided one-half interest. Furthermore, without evidence that Sidney ever encumbered Cassandra's one-half interest as well as his own, there was no unauthorized act for Cassandra to ratify. *Cf. Lincoln v. Aetna Cas. & Sur. Co.,* 300 S.C. 188, 191, 386 S.E.2d 801, 803 (Ct.App.1989) (noting that ratification, as it relates to the law of agency, requires, among other elements, "circumstances or an affirmative election indicating an intention to adopt the *unauthorized* arrangements") (emphasis added).

■ Finally, we agree with Cassandra that Chase has not alleged or proved it lacked an adequate remedy at law. Although the Master did not discuss the adequacy of a legal remedy in detail, he expressly allowed Chase to proceed with its foreclosure action against Sidney's undivided one-half interest. Here, there was no dispute Chase had a valid mortgage against Sidney's interest and, if necessary, the right to proceed with a deficiency claim against his estate.

## II. Unjust Enrichment

Chase next argues the Master erred in finding it failed to establish the necessary elements to recover under the South Carolina common law remedy of unjust enrichment. As a corollary to this argument, Chase takes issue with the Master's finding that it did not confer a benefit to Cassandra because she was not a direct recipient of the loan. We hold the Master correctly determined that Chase was not entitled to recovery under the theory of unjust enrichment.

"Unjust enrichment is an equitable doctrine, which permits recovery of the amount that the defendant has been unjustly enriched at the expense of the plaintiff." *Regions Bank,* 394 S.C. at 256–57, 715 S.E.2d at 356. One seeking to recover for unjust enrichment must show: "(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach,* 341 S.C. 1, 8–9, 532 S.E.2d 868, 872 (2000).

We hold Chase has not shown circumstances that would make it inequitable for Cassandra to retain any benefits that she received from Chase or Midland Mortgage. There was no evidence that Cassandra failed to disclose any information or discharge any legal obligation that would have prevented Midland Mortgage from authorizing a loan to Sidney that was secured only by his undivided one-half interest but was in an amount greatly exceeding the value of that interest. To the contrary, the evidence shows Midland Mortgage was or should have been aware that Cassandra was named on the contract with Sidney as a purchaser and did not sign either the note or the mortgage. *See Pitts v. Jackson Nat'l Life Ins. Co.,* 352 S.C. 319, 339, 574 S.E.2d 502, 512 (Ct.App.2002) (stating the plaintiff "failed to establish any duty to disclose or other cause of action that would allow recovery for unjust enrichment"). Moreover, Cassandra never signed the note or the mortgage, and there was no evidence that either Midland Mortgage or Chase attempted to procure her signature either at the closing or during the thirteen months between the closing date and Sidney's death.

III. Federal Common Law

 Chase next takes issue with the Master's citation to a federal case on unjust enrichment, arguing there is no federal question at issue in this action.[4] Although Chase is correct that this case does not involve a federal question, we find no error. It is not improper to cite cases from the federal courts as persuasive authority even on a matter litigated in a state court that does not present a federal question. Moreover, the cases from the South Carolina state courts that we have cited on unjust enrichment and restitution support the affirmance of the Master's finding that Chase is not entitled to recover against Cassandra based on a theory of unjust enrichment.

IV. Other Relief

 Finally, Chase contends that the Master erred in holding it is not entitled to any form of equitable relief because Midland Mortgage and the closing attorney could have avoided the loss. In support of this assertion, Chase argues the closing attorney is deemed to represent the buyer and Cassandra should be charged with the error of her attorney. Chase also points out that Midland Mortgage Corporation did not prepare or review the deed of conveyance. We hold these circumstances do not warrant reversal of the Master's refusal to award equitable relief to Chase.

We agree that in a standard real estate transaction, the closing attorney represents the borrower. *See* S.C.Code Ann. § 37–10–102(a) (2002) (referring to "legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing" of a loan that is primarily "for a personal, family or household purpose" and "is secured in whole or in part by a lien on real estate"). Nonetheless, even though Midland Mortgage Corporation did not prepare or review the deed, it processed the Rishers' loan application and, according to the Master's order, prepared the other closing documents. We found nothing in the record suggesting Midland Mortgage would have not had access to the contract of sale, which listed both Sidney and Cassandra as purchasers and was admitted into evidence as a plaintiff's exhibit. Fur-

4. The Master cited *Mason v. M.F. Smith & Assocs.,* 158 F.Supp.2d 673 (2001).

thermore, although Cassandra accompanied Sidney when he applied for the loan, she was never asked to complete an application or to sign either the note or the mortgage. We therefore hold that although Midland Mortgage Corporation was not formally represented by counsel at the closing, it had sufficient information to avoid the loss it sustained.

## CONCLUSION

We affirm the Master's findings that Chase was not entitled to an equitable lien, recovery under the theory of unjust enrichment, or any other form of equitable relief.

**AFFIRMED.**

HUFF and GEATHERS, JJ., concur.