**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

NHC HealthCare/Mauldin, LLC, Respondent,

v.

Wade Thompson and Shelia Thompson, Defendants,

Of whom Wade Thompson is the Appellant.

Appellate Case No. 2016-002302

———

Appeal From Anderson County
R. Scott Sprouse, Circuit Court Judge

———

Unpublished Opinion No. 2019-UP-378
Heard June 5, 2019 – Filed December 11, 2019

———

**REVERSED**

———

Susan P. Ingles, of S.C. Legal Services, of Greenville, and Sharon Young Ward, of Charleston, for Appellant.

Craig Horger Allen, of Craig H. Allen, P.A., and Erick Matthew Barbare, of The Barbare Law Firm, both of Greenville, for Respondent.

———

**PER CURIAM:** Wade Thompson appeals the circuit court's order awarding NHC Healthcare/Mauldin, LLC (NHC) damages. On appeal, Thompson argues the

circuit court erred in finding Thompson owed money to NHC for his stay at their facility based on the theory of quantum meruit. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

NHC is a skilled nursing and rehabilitative facility. NHC's admissions director testified she received a call from AnMed Hospital about admitting Thompson to NHC. The admissions director conducted a Medicare verification through Medicare's automated phone system, which indicated Thompson had one hundred benefit days available. Thompson's daughter (Daughter) signed the paperwork admitting Thompson to the facility but did not provide information to the admissions director to indicate Thompson did not have one hundred days available. Thompson was admitted to NHC on January 26, 2011.

The next day, January 27, the admissions director emailed the NHC corporate office for an email verification check of Thompson's Medicare benefit availability. The email response showed Thompson had zero benefit days remaining. However, the admissions director testified the email response did not raise any red flags to her because she had previously received inconsistent information from an email verification and the telephone response was more accurate. Later testimony revealed the admissions director had been involved with the admission of around three thousand patients to NHC and had seen a discrepancy between the phone and email verification systems four or five times. NHC did not further investigate the email response and did not inform Thompson or Daughter about the email response. The admissions director testified that even after receiving the email response, she still believed he had gotten a sixty-day break and that the Medicare verification she did by phone was correct. The admissions director testified she did not realize Medicare would not pay for Thompson's stay until "much later down the road." She clarified that information would not have come to her because she dealt only with the admissions process.

NHC's office and billing manager (Manager) testified she realized for the first time on March 7, 2011, that Thompson's care would not be covered by Medicare because Thompson had exhausted his benefit days. She called Daughter on March 7 to inform her of Medicare's denial of coverage. Manager attempted to find out how Thompson would have exhausted his benefit days. She testified that Daughter told her Medicare would not release Thompson's records to her. NHC was able to obtain Thompson's information as a healthcare provider. After inquiries to Medicare, the hospital, and Daughter, NHC confirmed that Thompson had exhausted his benefit days prior to his admission to NHC and Medicare would not

pay for Thompson's stay at NHC.[1] Manager testified Daughter decided to take Thompson home after this revelation. Thompson was discharged on March 10, 2011, and Daughter signed the discharge order. NHC informed Daughter on March 21, 2011, that Thompson would be billed as a private patient and owed an outstanding balance of $8,869.32. On cross-examination, Manager testified that NHC did not need to notify Thompson of the email response on January 27, 2011, because at that time Medicare had not denied coverage.

Daughter was the primary caregiver for Thompson, and it was typical for her to sign documents on Thompson's behalf. Daughter testified she was at the hospital with Thompson when the social worker found a room for him at NHC. She stated the social worker told her she had to "agree to pay the difference between a semiprivate room and a private room for 30 days because they didn't have a semiprivate room, and I was told that Medicare only pays for a semiprivate room. So that was okay, and so that's what I did." Daughter signed Thompson's admission papers to NHC but stated the admissions director did not review the paperwork with her or ask her "any questions at all." Rather, they discussed the admissions director's upcoming wedding and the admissions director just pointed to where Daughter needed to sign. Nothing was mentioned about the financial aspects of the admission other than the $630 prepayment of the difference between a private (not covered by Medicare) and semi-private room (covered by Medicare). No one from NHC asked Daughter about Thompson's prior stays until March 2011. Daughter stated neither she nor Thompson had the funds to pay the outstanding balance and she would not have admitted Thompson to NHC had she known that Medicare would not pay for it.

In 2014, NHC filed a summons and complaint against Thompson[2], seeking relief for breach of contract, account debt, and unjust enrichment. After a bench trial, the circuit court issued an order granting equitable relief to NHC for $8,869.32 based upon the theory of quantum meruit. This appeal followed.

## STANDARD OF REVIEW

A proceeding in quantum meruit is equitable. *See Columbia Wholesale Co. v. Scudder May N.V.*, 312 S.C. 259 n.1, 262, 440 S.E.2d 129, 131 n.1 (1994) ("Since the action at hand is not an action on a contract but an action seeking recovery

---

[1] Medicare did pay for Thompson's therapy.
[2] NHC also brought claims against Daughter, but the circuit court dismissed the claims, and NHC does not raise them on appeal.

under the equitable doctrine of quantum meruit, this scope of review applies."); *QHG of Lake City, Inc. v. McCutcheon*, 360 S.C. 196, 202, 600 S.E.2d 105, 107-08 (Ct. App. 2004) (applying an equitable standard of review to an action in quantum meruit).

"In an action at equity, tried by a judge alone, an appellate court may find facts in accordance with its own view of the preponderance of the evidence." *Inlet Harbour v. S.C. Dep't of Parks, Rec. & Tourism*, 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). "However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." *Straight v. Goss*, 383 S.C. 180, 192, 678 S.E.2d 443, 449 (Ct. App. 2009). "Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial judge committed error in his findings." *Pinckney v. Warren*, 344 S.C. 382, 387-88, 544 S.E.2d 620, 623 (2001). "[W]hen an appellate court chooses to find facts in accordance with its own view of the evidence, the court must state distinctly its findings of fact and the reason for its decision." *Dearybury v. Dearybury*, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002).

## LAW/ANALYSIS

Quantum meruit is an equitable doctrine to allow recovery for unjust enrichment. *See Columbia Wholesale Co.*, 312 S.C. at 261, 440 S.E.2d at 130. "A party may be unjustly enriched when it has and retains benefits or money which in justice and equity belong to another." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 383 S.C. 115, 123, 678 S.E.2d 430, 434 (2009). "Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *Id.* "One seeking to recover for unjust enrichment must show: '(1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value.'" *Chase Home Fin., LLC v. Risher*, 405 S.C. 202, 212, 746 S.E.2d 471, 476-77 (Ct. App. 2013) (quoting *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 341 S.C. 1, 8-9, 532 S.E.2d 868, 872 (2000)).

We find the preponderance of the evidence relating to the third element above ("retention of the benefit . . . under circumstances that make it inequitable for him to retain it") bars recovery by NHC. Here, NHC is estopped from seeking recovery from Thompson because it acted with unclean hands by admitting Thompson to its care under the assumption of Medicare coverage and then failing to notify Thompson of its own corporate email response stating no benefit days were

available to Thompson.  *See First Union Nat. Bank of S.C. v. Soden*, 333 S.C. 554, 568, 511 S.E.2d 372, 379 (Ct. App. 1998) ("The doctrine of unclean hands precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant.").  Testimony from Daughter is clear that if she had been given notice on January 27 that Thompson's stay might not be covered, she would have removed him from the facility.  Testimony regarding the circumstances around Thompson's admission to the facility shows that it was treated routinely by NHC on January 26, and both parties were operating under the assumption that Medicare would cover the stay.  The Record contains a section of the paperwork regarding Medicare coverage that states: "It is the professional judgment of this Center that Patient's care will X will not _ be covered by Medicare."  In that section, "will" is marked with an "X" and underlined twice, indicating emphasis on the parties' assumption of Medicare coverage.  However, once NHC received the email response, it became aware the admission was not routine.  Testimony shows the highly unusual occurrence of conflicting information about available benefit days was disregarded by NHC.  Notably, NHC made no attempt to inform Daughter or discuss the situation with Thompson when they received the conflicting information on January 27.  Testimony shows Daughter was not able to access information about Thompson's available Medicare benefits, and NHC, as a healthcare provider, was able to access the information.  Because the circumstances surrounding Thompson's stay do not make it inequitable for him to retain the benefit of the services, we find NHC's claim for recovery under quantum meruit fails.  *See Ingram v. Kasey's Assocs.*, 340 S.C. 98, 107, 531 S.E.2d 287, 291 (2000) ("We rely on the equity maxim: 'He who seeks equity must do equity.'").

We find Thompson is liable only for the difference between a private and semi-private room, of which Thompson prepaid $630.  Accordingly, the order of the circuit court is

**REVERSED.**

**HUFF, THOMAS, and KONDUROS, JJ., concur.**