# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Montgomery Holdings, LLC d/b/a IBI Builders,
Respondent,

v.

Christopher J. Merlo and Grandsouth Bank, Defendants.

and

Christopher J. Merlo, Appellant,

v.

Gregory K. Grissinger, Jr. and John Montgomery,
Respondents.

Appellate Case No. 2022-001189

Appeal From Oconee County
Steven C. Kirven, Master-in-Equity

Opinion No. 6135
Heard September 10, 2025 – Filed February 11, 2026

**AFFIRMED**

Townes Boyd Johnson, III, of Townes B. Johnson III,
LLC, of Greenville, for Appellant.

Jason M. Tarokh, of Tampa, Florida, for Respondents.

**KONDUROS, J.:**  This is a consolidated foreclosure/breach of contract action arising out of the contract between Montgomery Holdings, LLC d/b/a IBI Builders (IBI) and Christopher J. Merlo for the construction of Merlo's custom home at Lake Keowee.  Merlo terminated the construction contract on October 12, 2019, while still owing $255,534.86 according to IBI's balance sheet for the project.  IBI filed a mechanic's lien and foreclosure action and a breach of contract claim.  Merlo counterclaimed and also brought suit against Gregory K. Grissinger, Jr. (Grissinger) and John Montgomery (Montgomery), the primary members of IBI, individually.  After a bench trial, the master-in-equity awarded a $402,861.66 verdict in favor of IBI and ordered the sale of the property.  Merlo appeals, and we affirm.

**FACTS/PROCEDURAL HISTORY**

IBI and Merlo entered into a written contract dated November 17, 2017 (the Contract), for the construction of a custom home on Merlo's real property for the base price of $625,000 plus any change orders (to be paid as they occurred) and allowance overages.  The contract provided IBI would build the house "per plans and scope" and be solely responsible for "construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the work under the contract."  Merlo provided a plan for the home, the "Sandy Creek," a Donald Gardner home plan available for purchase by the public.  The plan was modified to some extent based on the terrain of Merlo's lot and based on Merlo's requested changes.

The project proceeded over the next two years with some problematic issues along the way that seemed to be resolved through communication between the parties.[1]  Merlo provided "re-work" lists to IBI and the parties would consult and attempt to resolve them.  In May of 2019, Merlo requested he be allowed to add any change order costs to the balance sheet with the understanding he was obtaining a home equity line of credit (HELOC) to cover these additional costs.  In exchange for agreeing to this plan, IBI obtained a guaranty from Merlo.  The Guaranty provided that Merlo agreed the balance sheet as of April 30, 2019, consisted of a total balance owed to IBI in the amount of $183,382, agreed to pay IBI for all past and pending change orders reflected on the April 30, 2019 balance sheet, and that all future change orders and allowance overages would be added to the balance sheet.

---

[1] The Contract provided that inclement weather, delays in decision-making by the owners, and plan changes would add to the estimated construction time of twelve months.

The guaranty also provided that full payment of these obligations would be made prior to "move in completion of home and or Certificate of Occupancy request." Merlo also specifically waived the defense of lack of consideration and other defenses.

GrandSouth Bank held the construction loan that primarily funded the project, and Lee Matthew West III had performed construction loan draw inspections for the Merlo project on GrandSouth's behalf. West inspected the Merlo project on August 26, 2019, and found that it was 93% complete. As the construction was drawing to a close, on October 11, IBI notified Merlo it was preparing to request a Certificate of Occupancy and requested payment for the outstanding balance sheet items. However, Merlo indicated his securing the needed money was contingent upon *receiving* a certificate of occupancy and was through an online lender as opposed to GrandSouth. Montgomery suggested a meeting with Merlo to resolve the issue, but Merlo indicated he was not available. IBI had just received the appliances for installation and was prepared to continue with finalizing the project. The following day, Merlo terminated his contract with IBI via email stating,

> After careful consideration, I decided to terminate my contract with IBI Builders effective immediately. The contract began November 16th, 2017[,] and 695 days have passed, 2 years to build a 4,000 square foot house. It remains unfinished & the re-work required is extensive. I cannot in good conscience devote another year of my life to this partnership.

IBI filed a mechanic's lien against the property for the outstanding amounts due. On November 8, 2019, IBI filed a complaint alleging foreclosure of its mechanic's lien, breach of contract, unjust enrichment, and quantum meruit. IBI also named Bank of Travelers Rest and GrandSouth as defendants to the foreclosure claim. Merlo filed his answer and counterclaim and a third-party complaint against Montgomery and Grissinger. The counterclaim alleged breach of contract, negligence, negligence misrepresentation, fraud, violation of the South Carolina Unfair Trade Practices Act (SCUTPA), and breach of fiduciary duty against IBI. The third-party complaint alleged those same claims against Grissinger and Montgomery except for breach of contract. The circuit court ultimately consolidated the actions, and they were referred to the master.

The master conducted a four-day bench trial. At the conclusion of evidence, Merlo moved for directed verdict on all his claims. The master denied his motion.

The master granted a directed verdict in favor of IBI, Grissinger, and Montgomery as to Merlo's claims of negligence, negligent misrepresentation, fraud, SCUTPA violation, and breach of fiduciary duty. The master also granted a directed verdict as to Merlo's negligence claim against Grissinger and Montgomery in their individual capacities. The master rendered a judgment in favor of IBI on its breach of contract and mechanic's lien foreclosure claims, finding Merlo had unjustifiably breached the Contract first and that IBI had substantially performed its obligations under the Contract. He further found Merlo had failed to prove his breach of contract claim because testimony of Montgomery, Grissinger, and their expert indicated IBI had performed the construction of the home in a good and workmanlike manner. The master further indicated he found Merlo was not credible in his testimony. He found the total debt due to IBI was $402,861.66, which included the amount claimed by IBI, prejudgment interest, and attorney's fees. The master ordered the subject real property be sold to satisfy the indebtedness owed to IBI and dismissed the additional claims of both parties. On July 28, 2022, the Oconee County Clerk of Court filed a notice of sale, which scheduled a foreclosure sale of the subject real property for September 6, 2022. Merlo filed a motion to alter or amend, which was denied, and then filed a notice of appeal.

Subsequently, on August 29, 2022, while this appeal was pending, IBI filed a satisfaction of judgment, which provided the judgment against Merlo "has been satisfied in full as to all damages, costs, and charges." In response IBI filed a motion and order canceling the foreclosure sale scheduled for September 6, 2022. We now consider Merlo's appeal.

**LAW/ANALYSIS**

As an initial matter, IBI asserts Merlo waived his right to appeal the master's order when he paid the verdict, or in the alternative, he should be estopped from appealing because he paid the judgment instead of posting a bond to stop the sale of the property as outlined in section 18-9-170 of the South Carolina Code (2014). We disagree.

Section 18-9-170 provides:

> If the judgment appealed from direct[s] the sale or delivery of possession of real property, the execution of the judgment shall not be stayed unless a written undertaking be executed on the part of the appellant, with

> two sureties, to the effect that during the possession of such property by the appellant he will not commit or suffer to be committed any waste thereon and that if the judgment be affirmed he will pay the value of the use and occupation of the property from the time of the execution of the undertaking until the delivery of possession thereof pursuant to the judgment, not exceeding a sum to be fixed by a judge of the court by which judgment was rendered and which shall be specified in the undertaking.

While this statute provides one method for staying the sale of property, satisfaction of the judgment rendered has the same effect and did halt the sale of the property in this case. Federal law on the matter suggests, in contrast to IBI's assertion, such conduct does not automatically waive the right to appeal. *See Chase Home Fin., LLC v. Risher*, 405 S.C. 202, 213, 746 S.E.2d 471, 477 (Ct. App. 2013) ("It is not improper to cite cases from the federal courts as persuasive authority even on a matter litigated in a state court that does not present a federal question.").

> A payment of a judgment is not necessarily a bar to appeal. When a payment of a judgment is made and accepted under such circumstances as to indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed, but, under such circumstances, it is the mutual manifestation of an intention to bring the litigation to a definite conclusion upon a basis acceptable to all parties which bars a subsequent appeal, not the bare fact of payment of the judgment.

*Gadsden v. Fripp*, 330 F.2d 545, 548 (4th Cir. 1964) (footnote omitted). "The usual rule in the federal courts is that payment of a judgment does not foreclose an appeal." *Woodson v. Chamberlain*, 317 F.2d 245, 246 (4th Cir. 1963). "Unless there is some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment, and so long as, upon reversal, restitution can be enforced, payment of the judgment does not make the controversy moot." *Id.* (footnote omitted). "There can be no question that a debtor against whom a judgment for money is recovered, may pay that judgment, and bring a writ of error to reverse it, and if reversed can recover back his money." *Dakota Cnty. v. Glidden*, 113 U.S. 222, 224 (1885).

IBI cites to no cases directly on point or to any language in section 18-9-170 suggesting a payment bond is the *exclusive* way to stop a sale and still preserve the right to appeal. Nothing in the record addresses the mindset of the parties in paying or accepting the judgment monies, but circumstances imply Merlo was seeking to avoid the sale of his property and pursue an appeal of the judgment. In the absence of South Carolina case law to the contrary, we believe the federal law on point precludes our deciding the case based on waiver, mootness, or estoppel.

## I. Directed Verdict

Turning to the merits of the case, Merlo argues the master erred in denying his directed verdict motions.[2] We disagree.

"When reviewing the trial court's ruling on a motion for a directed verdict, we must employ the same standard as the trial court—that is, we must consider the evidence in the light most favorable to the non-moving party." *Fickling v. City of Charleston*, 372 S.C. 597, 603, 643 S.E.2d 110, 113-14 (Ct. App. 2007). "When ruling on a motion for a directed verdict, the trial court is required to deny the motion if either the evidence yields more than one inference or its inference is in doubt." *Id*. at 603, 643 S.E.2d at 114. "When considering a motion for a directed verdict, neither the appellate court nor the trial court has authority to decide credibility issues or to resolve conflicts in the testimony and evidence." *Id*.

In his appellate brief, Merlo states the bases for his directed verdict motion as follows: (1) as to breach of contract, IBI deviated from the plans regarding the height of the basement in the home; (2) as to breach of contract, a lack of consideration existed for the guaranty; and (3) as to his claims for negligent misrepresentation, SCUTPA, fraud, and breach of fiduciary duty, IBI did not present specific invoices for certain add-ons or overages on the balance sheet. We address each in turn.

---

[2] Motions for directed verdict are inappropriate in cases being tried by the judge without a jury. *Fickling*, 372 S.C. at 599 n.1, 643 S.E.2d at 112 n.1 ("[A] motion for a directed verdict under Rule 50, SCRCP, is appropriate only in jury trials."). Neither party has raised this point on appeal, and it makes no difference in our consideration of the case. The appeal is from *Merlo's denial* of directed verdict on his counterclaims. The Master's decision was reached after a full trial on the merits and fully supports his denial of the motions.

## A. Basement Height

Merlo maintains the master erred in denying his directed verdict motion for breach of contract because IBI deviated from the plans regarding the height of the home's basement. We disagree.

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders, Inc. v. Coggins*, 386 S.C. 43, 48, 686 S.E.2d 200, 202 (Ct. App. 2009).

Pursuant to the Contract, IBI agreed to construct the home "per plans and scope." The Contract's "Spec Sheet," which was "based off plans," called for ten-foot ceilings to be constructed in the basement. Grissinger, who was the general contractor in the field on the project, testified the plans show the first-floor ceiling height of eleven feet and three inches and when a sixteen-inch I-joist and half inch drywall is added, it brings the basement ceiling height to nine feet and eight inches, which was built pursuant to the plans. Grissinger testified that he and Merlo "had a conversation about it and it was never brought up again because he understood why it was like it was, you know, it was built to plan." Grissinger testified that Merlo "asked why [the ceilings were not ten feet on the interior] and I explained to him that it was like the plan and this is how you get those measurements, and then it was never brought up again." Grissinger testified Merlo "fully understood the ceiling heights and he was fine with it because we built it per plan."

IBI's expert at trial, Michel Laplante, an architect, testified the Contract and the plans conflicted: "If I built per the drawings precisely which is what the contract says to do, you can't get 10 feet. And if I do the 10 feet, then I can't do it per the drawings so that should've been resolved." Laplante further testified, "you cannot build a house with beams, et cetera to achieve a 10-foot ceiling height per those plans, period."

The evidence presented did not clearly demonstrate that the lowered basement ceiling height was outside the plans or not in accordance with the plans. Furthermore, the evidence presented conflicted as to whether Merlo had understood the alleged deviation from the plans and acquiesced to it. Additionally, Merlo failed to present evidence of damages suffered based on the as-constructed interior height of the basement. Therefore, the master did not err in declining to direct a verdict or otherwise find for Merlo on this basis.

## B. Consideration for Guaranty

Merlo maintains the master erred in denying his motion for directed verdict for breach because the master incorrectly found new consideration existed for the Guaranty because it was merely an extension of the preexisting contract. We disagree.

"Valuable consideration may consist of some right, interest, profit[,] or benefit accruing to one party or some forbearance, detriment, loss[,] or responsibility given, suffered[,] or undertaken by the other." *McPeters v. Yeargin Const. Co.*, 290 S.C. 327, 331, 350 S.E.2d 208, 211 (Ct. App. 1986).

Here, the Contract required Merlo to pay for add-ons and overages out of pocket as they arose. The Guaranty demonstrates it was signed as part of IBI's agreement to forebear collecting the overages and carry them on the balance sheet until the conclusion of the project. Therefore, we affirm the master's finding as to this issue.

## C.    Lack of Invoices

Finally, Merlo argues the master erred in denying his motion for directed verdict as to several more of his claims including those for negligent misrepresentation,[3]

---

[3] *See AMA Mgmt. Corp. v. Strasburger*, 309 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct. App. 1992) ("[T]he plaintiff must allege and prove the following essential elements to establish liability for negligent misrepresentation: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.").

breach of fiduciary duty,[4] violation of SCUTPA,[5] and fraud,[6] because IBI was unable to provide specific invoices for certain add-ons or overages.  We disagree.

The specific add-ons Merlo complains of include charges on the balance sheet for hauling dirt, staining doors, increasing the size of the theater room in the house, landscaping overages, a deck extension, and two additional electrical receptacles. The final balance sheet reflected $14,075 for "Haul Dirt," $1,305 for "Staining Each Door/$45 Each 29 Doors," $7,975 for "Making Theater room larger," $30,945 for "Landscape Overage (Landscape lights)," $6,415 for "Deck extension Flooring and Rail Not on Plan," and $550.00 for "2 extra floor receptacles."  Montgomery testified that Merlo had known about and approved each of these specific items.

Montgomery indicated that haul dirt was on the balance sheet from the beginning of the project, was pending when Merlo signed the Guaranty, and that the $14,075 figure was based on the cost to haul dirt.  Regarding staining the doors, the $7,975 figure was calculated by multiplying the number of doors (29) by the cost per door ($45) which was agreed to by Merlo.  Grissinger testified that IBI calculated the price for enlarging the theater room based on the added square footage, extra materials, extra door, and extra labor, which IBI paid for and for which it had

---

[4] *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335-36, 732 S.E.2d 166, 173 (2012) ("To establish a claim of breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant.").
[5] *See Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct. App. 2006) ("To recover in an action under the [SC]UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).").
[6] *Sorin Equip. Co. v. The Firm, Inc.*, 323 S.C. 359, 365, 474 S.E.2d 819, 823 (Ct. App. 1996) ("To establish fraud, a party must prove: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.")

supporting documentation.  Regarding the landscape overage, Montgomery testified that the total charge was $44,945 but the allowance in the contract was for $15,000, leaving an overage of $29,945.  As to the $6,415 figure for expanding the deck, Montgomery testified Grissinger provided the figure based on additional railing, deck flooring, and decking, plus labor.  Finally, as to the two additional floor outlets, Montgomery testified he believed the $550 figure was generated by the costs of outlets and an electrician's services.

In his brief, Merlo asserts very generally that the lack of invoices supported directed verdicts on claims for negligence, fraud, negligent misrepresentation, SCUTPA, and breach of fiduciary duty.  The factual testimony recited above provides a sufficient basis for denying Merlo's motion in the absence of testimony or evidence to the contrary or proof of what the charges should have been instead of what was charged.  However, beyond that, the master provided other bases for his denial that Merlo does not appeal.  As to negligence, the master denied the claim on the basis of the economic-loss rule.  As to the SCUTPA claim, the master found the conduct did not affect the public interest and was not capable of repetition.  As to the fiduciary duty claim, the master found Merlo did not establish a fiduciary duty between the parties.  Based on all of the foregoing, we affirm the master on the merits, or in the alternative, under the two-issue rule.  *See Anderson v. S.C. Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 420 n.1, 472 S.E.2d 253, 255 n.1 (1996) ("It should be noted that although cases generally have discussed the 'two issue' rule in the context of the appellate treatment of general jury verdicts, the rule is applicable under other circumstances on appeal, including affirmance of orders of trial courts.").

## II.    Questions of Law

Merlo further asserts the master erroneously decided questions of law.  "As to questions of law, this court's standard of review is de novo."  *Citizens for Quality Rural Living, Inc. v. Greenville Cnty. Plan. Comm'n*, 426 S.C. 97, 102, 825 S.E.2d 721, 724 (Ct. App. 2019).  Some arguments are repetitive of issues previously addressed, but we will again address each in turn.

### A.    Breach of Contract

Merlo again asserts IBI breached their contract by failing to build the home "per the plans" and thus, the master erred in determining IBI did not breach the Contract.  We disagree.

"The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *Branche Builders*, 386 S.C. at 48, 686 S.E.2d at 202.

Merlo again references the basement ceiling height and also cites to the encroachment of his driveway and the encroachment of a boulder wall onto his neighbors' properties. Finally, he points out IBI's failure to pour a concrete retaining wall called for in the plans. As to the basement ceiling height, as previously discussed, Merlo failed to establish the basement was not constructed in accordance with the plan or that the change was a breach and one to which he did not acquiesce. With regard to the encroachments, Laplante testified the responsibility for providing accurate property line information rests with the homeowner. Furthermore, Grissinger and Montgomery testified Merlo had considerable input in the positioning and construction of both the driveway and the boulder wall, even telling the crew to extend the driveway by three feet without notifying IBI. With regard to the poured concrete retaining wall, Grissinger testified in detail regarding how that issue was handled on site. He indicated the location of the home on the lot dictated the construction of the wall as determined by the foundation contractor. The wall at issue in the plan did not need to be poured concrete based on its location. The concrete that would have been in the three-foot wall per the plan, was added into a different three-foot wall to create a needed six-foot wall. The amount of concrete and cost was the same to Merlo, and he presented no evidence this adjustment in the plan was incorrect or damaged him in any way. Laplante also testified he could not discern from the plans that the relevant wall was required to be poured concrete. Based on all of the foregoing, we affirm the master.

## B. Negligence

Merlo argues the master erred in denying his direct verdict motion by erroneously concluding IBI was not negligent in constructing the home. We disagree.

"[T]o establish a cause of action for negligence, [one] must prove the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 349 S.C. 7, 11, 561 S.E.2d 597, 599 (2002). Merlo's arguments are based upon the same facts as recounted in his breach of contract claim above. Again, we find ample evidence in the record to supports the master's conclusion that IBI was not negligent.

### C. Approval of Change Orders

Merlo alleges the master erred in finding Merlo approved the change orders made during the construction of the project.  However, he makes little to no factual argument on the point and cites to no authority.  Therefore, we find this issue is abandoned.  *See Glasscock, Inc. v. U.S. Fid. & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

### D. Fiduciary Duty

Merlo contends Montgomery and Grissinger breached a fiduciary duty to him in constructing the home.  We disagree.

"A 'fiduciary relationship' is founded on trust and confidence reposed by one person in the integrity and fidelity of another." *Steele v. Victory Sav. Bank*, 295 S.C. 290, 293, 368 S.E.2d 91, 93 (Ct. App. 1988).  "A fiduciary relationship exists when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *O'Shea v. Lesser*, 308 S.C. 10, 15, 416 S.E.2d 629, 631 (1992).

In this case, Merlo presented no evidence of the existence of a fiduciary duty between himself and IBI.  On appeal, he does not make an argument as to how or why the master's failure to find such duty was error.  He simply cites two cases that define fiduciary duty.  Therefore, we conclude this issue is abandoned.  *See Glasscock*, 348 S.C. at 81, 557 S.E.2d at 691 ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

### E. Judicial Notice

Merlo contends the master erred in declining to take judicial notice of the contents of a "learned treatise" presented at trial—an electrical code manual from Oconee County.  This issue is only relevant to Merlo's claim that an electrical panel was improperly installed.  Merlo testified the panel reached a degree higher than is permitted by the document.  The master did not admit the document, but did provide an opportunity for Merlo to "shore that [request] up with some better foundation later on [if] you can"; Merlo did not do so.  Furthermore, at trial, Merlo attempted to introduce the document pursuant to Rule 201, SCRE, but on appeal relies on Rule 803, SCRE, which requires expert testimony that he did not offer.

*See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) ("A party may not argue one ground at trial and an alternate ground on appeal.").  Therefore, we conclude this issue is not preserved.

## F.     Damages

This argument consists of a single sentence with no citation to authority, and we therefore conclude it is abandoned.  *See Glasscock*, 348 S.C. at 81, 557 S.E.2d at 691 ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review.").

## III.   Findings of Fact

Finally, Merlo asserts the master erred in making the following findings of fact because he contends the record did not support them:

- IBI's balance sheets were maintained timely and accurately;
- The completion percentage of IBI's work was greater than 93%;
- Supervision on the project was appropriate and within the standard of care;
- The house was constructed in accordance with the plans;
- Photographs taken by Merlo were mid-construction;
- Merlo only starting raising construction defect issues after IBI served its mechanic's lien;
- Merlo did not present a definitive scope of work performed by Joy Construction, the subsequent general contractor on the project; and
- Merlo made changes and additions to the plans after IBI's termination.

"In actions at law tried without a jury, the findings of fact of the judge will not be disturbed on appeal unless found to be without evidence which reasonably supports them."  *Knox v. Bogan*, 322 S.C. 64, 66, 472 S.E.2d 43, 45 (Ct. App. 1996).

Several of these issues, including the maintenance of balance sheets, completion percentage of work, and construction in accordance with the house plans, have already been addressed, and we again affirm the master with respect to these points as evidence in the record supports his findings.  As to the remaining issues, with regard to the supervision of the project, Grissinger testified he was typically on site two to three times per week except during periods when little work was happening.  He also stated he communicated frequently with Merlo, and no evidence contradicted his testimony beyond Merlo's assertion that the work was not properly

supervised. The master found Merlo wholly lacking in credibility. *See State v. Blackwell*, 420 S.C. 127, 140, 801 S.E.2d 713, 720 (2017) ("Because the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, we must defer to the court's determinations."). The record demonstrates that Merlo made certain complaints and submitted re-work lists to IBI prior to the filing of its mechanic's lien. However, according to Grissinger and Montgomery's testimonies and the emails between the parties, it appears those matters were generally resolved. Merlo emailed GrandSouth that the project "exceeded his expectations," emailed IBI thanking it for getting the project "to the finish line," and inquired with IBI if it would be interested in working on another project with him. Merlo presented an invoice from Joy Construction at trial, but the invoice, as well as from Merlo's testimony, did not make clear precisely what work Joy did that was remediation of allegedly poor work by IBI and what was completing and/or adding to the scope of the project. Accordingly, we affirm the master as to these findings of fact as well.

**CONCLUSION**

Based on all of the foregoing, the order of the master is

**AFFIRMED.**

**GEATHERS and VINSON, JJ., concur.**